IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOANN BROWN,                             § | |
|     PLAINTIFF,                              § | |
|                                       § | |
| v.                                                              § | CIVIL ACTION NO. 4:08-CV-155-A |
|                                       § | |
| MICHAEL J. ASTRUE,                     § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT.                             § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.   STATEMENT OF THE CASE

Plaintiff JoAnn Brown filed this action for judicial review of a final decision of the Commissioner of Social Security denying her claim for widow's insurance benefits[1] under Title II of the Social Security Act. *See* 42 U.S.C. § 405(g). She applied for widow's insurance benefits on November 16, 2004, alleging that she has been disabled since September 1, 1995. (Tr. 61-63). After the Social Security Administration denied her application for benefits both initially and on reconsideration, Brown requested a hearing before an administrative law judge (the "ALJ"). ALJ

---

[1] Widow's insurance benefits are available to a widow or a surviving divorced wife upon attaining age 60, or as relevant to Hunter's case, attaining age 50 and being under a disability as defined by the Social Security Act. *See generally* 42 U.S.C. § 402(e).

William Helsper held a hearing on August 15, 2006, in Fort Worth, Texas. (Tr. 199). On August 23, 2006, the ALJ issued a decision that Brown had no severe impairment; therefore, she was not considered disabled for purposes of the Social Security Act. (Tr. 18-21). The Appeals Council denied Brown's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 7).

B.   STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). This definition also applies to a widow's claims for disability insurance benefits that is based on the earnings record of the deceased spouse. 42 U.S.C. § 402(e)(1)(B)(ii).

A five-step analysis is employed to determine if a claimant is disabled. 20 C.F.R. § 404.1520. *See* 20 C.F.R. § 404.1505 (applying same evaluation process to disability claims by a worker or a qualifying disabled widow for benefits payable after December 1990). First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing

...

any other work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* The court may neither reweigh the evidence in the record its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.   ISSUES

    1.   Whether the ALJ applied the appropriate standard in finding that Brown had no severe impairments; and

    2.   Whether the ALJ failed to give appropriate weight to a treating source opinion.

D.   ADMINISTRATIVE RECORD

   1.   Medical History

The administrative record includes the following information about Brown: She was born February 3, 1949, and she was married to Jerry Brown from 1967 until his death in 2004. (Tr. 61, 62). She has a ninth-grade education and has been a homemaker most of her adult life, but she did work as a waitress for several months when her daughter was young. (Tr. 92, 202). Brown's chief complaints include fibromyalgia,[2] neck pain, back pain, migraine headaches, irritable bowel syndrome, and depression.

Rheumatologist Larry Marshall, M.D., diagnosed Brown with fibromyalgia in 1997 based on laboratory results and positive physical findings when he examined her.[3] (Tr. 190-91). Marshall recommended hot and cold therapy, massage, aerobic exercise, rest, a proper diet, and an antidepressant. (Tr. 191).

Brown has been treated by Karen Spetman, M.D., since 2000. Spetman added a second antidepressant to Brown's treatment regimen, as well as a muscle relaxer and ibuprofen. Spetman made numerous adjustments to Brown's medications to address her complaints of diffuse pain, fatigue, headaches, and insomnia. (Tr. 170-75, 178-85).

Brown had neck surgery in September 2001, which consisted of a fusion at C5-C6. (Tr. 161). Cervical magnetic resonance imaging (MRI) the following year showed disc dessication, a disc bulge and mild narrowing at C4-C5, and a larger disc bulge causing spinal canal stenosis and

---

[2] Fibromyalgia refers to pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 711 (31ST ed. 2007).

[3] The Commissioner mistakenly states that this report was prepared in 2007, but the date on the report confirms that the rheumatologist examined and diagnosed Brown in 1997.

moderate narrowing at C6-C7.  (Tr. 161-62).

Spetman completed a functional capacity assessment on July 25, 2006.  (Tr. 187-88). Spetman opined that Brown could lift and carry up to ten pounds, stand for less than an hour per day, sit for approximately one hour per day, and would need to rest and elevate her legs for at least two hours during the day.  (Tr. 187).  Spetman also opined that Brown was unable to use her left hand for simple grasping and could not perform fine manipulation tasks with either hand.  She further found that Brown should never squat, crawl, climb, or reach, but could occasionally bend.  (Tr. 187). Spetman opined that Brown's complaints of pain and fatigue were credible for a patient suffering from fibromyalgia, and that her pain was frequently debilitating in degree.  Spetman asserted that Brown had been functioning at this level since 1997 or 1998.  (Tr. 188).

    2.    ALJ Decision

The ALJ found that Brown had not engaged in substantial gainful activity since September 1995.  (Tr. 19). Proceeding to the second step of the sequential evaluation process, the ALJ found that Brown had no severe impairment or combination of impairments.  (Tr. 20, 21).  Accordingly, he concluded that Brown was not disabled.  (Tr. 21).

E.    DISCUSSION

    1.    Severity Standard

Brown contends that the ALJ failed to apply the correct legal standard for severity at the second step of the sequential evaluation process. More specifically, she asserts that the ALJ used the regulatory definition of a severe impairment, not the severity standard prescribed by the Fifth Circuit.    The Commissioner has issued regulations that define a severe impairment as one which significantly limits a claimant's physical or mental ability to do basic work activities.  20

C.F.R. § 404.1520(c). The Fifth Circuit, however, has found that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act. *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000); *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Stone*, 752 F.2d at 1101. The courts are to presume that the ALJ used an incorrect standard for measuring severity if the decision fails to refer to the *Stone* opinion by name or cite language of the same effect. *See Loza*, 219 F.3d at 393.

Brown concedes that the ALJ cited the *Stone* decision, but asserts that despite this reference, the ALJ applied an improper standard of severity by using language similar to that condemned in *Sanders v. Astrue*, 2008 WL 4211146 (N.D. Tex. Sept. 12, 2008). The ALJ in *Sanders* had defined a severe impairment as one "that would have no more than a minimal effect on an individual's ability to work." *Id*. at *7. The ALJ did not refer to *Stone* by name or a similar opinion applying the Fifth Circuit's standard for severity. *Id*. The district court found that, although the difference between *Stone* and the language used by the ALJ appeared slight, the ALJ's construction was not an express statement of the *Stone* standard. *Id*. *But see* SOCIAL SECURITY RULING 85-28, 96-3p (outlining severity standard that uses the "no more than minimal effect" language and clarifying that the agency is using a standard consistent with circuit court decisions). The district court remanded the case after finding that the failure to follow or cite *Stone* was legal error, which left the district court with no discretion to determine whether the error was harmless. *Id.* at *8.

In *Sanders*, it was the combined impact of the ALJ's use of imprecise language and his failure to cite *Stone* or a similar opinion that led the court to find that the ALJ applied an incorrect standard for severity. *Id*. at *7. In Brown's case, the ALJ used the same language condemned in *Sanders*; however, he also cited *Stone* in addressing the issue of severity. Usually this would be an indicator that the ALJ applied the correct legal standard in his decision, but the remainder of the written decision in Brown's case demonstrates that the ALJ gave only token recognition to the law in this circuit and presented a haphazard summary of the standards that govern the threshold severity issue. In fact, despite citing *Stone*, the ALJ made a specific finding that Brown

> does not have an impairment or combination of impairments that significantly limits her ability to perform basic work-related activities; therefore, the claimant does not have a severe impairment.

(Tr. 21). The ALJ may have identified *Stone* as the governing law, but it appears that he applied the regulatory definition that the Fifth Circuit has rejected. At a minimum, there is an ambiguity in the ALJ's decision at Step Two that must be resolved at the administrative level.

2.   Treating Source Opinion

Brown also contends that the ALJ's determination that she has no severe impairment is unsupported by substantial evidence and contrary to the treating physician's opinion. Spetman opined that fibromyalgia limits Brown's ability to lift or perform other work activities, which Brown argues is some evidence that her impairment is severe under the de minimis *Stone* standard.

Opinions, diagnoses, and medical evidence from a treating physician who is familiar with the claimant's impairments, treatments, and responses should be given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Controlling weight is assigned to the opinions of a treating physician if

well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Before rejecting a treating source opinion, the ALJ must address several relevant factors, including the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. § 404.1527(d); *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *See also* SOCIAL SECURITY RULING 96-2p, 96-5p. However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 237. *See also* 20 C.F.R. § 404.1527(e).

The ALJ acknowledged that Spetman had completed a physical functional capacity form on Brown's behalf, but he did not identify the weight that he assigned to Spetman's opinions, explain why he disagreed with her assessment, or even affirm that he had weighed the medical opinions in accordance with the regulations. This omission was prejudicial because Spetman's opinions indicate that fibromyalgia has more than a minimal affect on Brown's ability to work, which conflicts with the ALJ's decision to end his analysis at Step Two of the sequential evaluation process.

The Commissioner argues that Spetman's July 2006 assessment is inconsistent with evidence that Brown did not seek regular medical care or exhibit physical manifestations indicative of a severe impairment; however, this explanation is not found within the body of the ALJ's decision. The Commissioner's decision must stand or fall based on the reasons set forth in the ALJ's decision

as affirmed by the Appeals Council, not on the Commissioner's post hoc reasoning in the briefs filed with the court. *See Newton*, 209 F.3d at 455. Given the de minimis standard for severity in this circuit, the ALJ's failure to weigh the medical opinions of record prejudiced Brown's substantial rights and requires that her claim be remanded for further development.[4] *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until May 14, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed

---

[4] The Commissioner argues that the ALJ also found Brown's impairments were not severe because they failed to satisfy the 12-month duration requirement; however, Spetman stated that Brown had operated at a reduced level of functioning since 1997-1998. (Tr. 20, 188). The duration issue can be addressed as part of the proceedings on remand.

factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until May 14, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED APRIL 23, 2009.

   /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE